UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Jose Vargas Mendoza</u>

v.                                      Case No. 13-cv-279-SM
                                        Opinion No. 2014 DNH 172

<u>Carolyn W. Colvin,</u>
<u>Acting Commissioner,</u>
<u>Social Security Administration</u>

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Jose Vargas Mendoza moves to reverse the Commissioner's decision denying his application for social security disability insurance benefits and supplemental security income benefits.  The Commissioner moves to affirm the decision.  For the reasons discussed below, Mendoza's motion is denied, and the Commissioner's motion is granted.[1]

**Factual Background**[2]

I. <u>Medical History</u>

In 1996, diagnostic testing for back pain showed that Mendoza had a large central disc herniation at L5-S1.  He sought

---

[1] In the parties' joint statement of material facts, the claimant is referred to as "Mr. Mendoza," "Mr. Vargas," "Mr. Vargas Mendoza," and "Mr. Vargas-Mendoza."  At the hearing, the claimant explained that "Vargas" is his father's name and Mendoza is his mother's name and that he uses both names.  To avoid additional confusion and because the claimant is more often referred to as "Mendoza", the court will use the name "Mendoza" when referring to him.

[2] The factual background is summarized from the parties' joint statement of material facts, which is document no. 15.

treatment for back pain and related headaches during the next several years.

While lifting weights in 2007, Mendoza tore the left pectoralis muscle.  On July 6, 2007, Dr. Bell, a surgeon at Dartmouth-Hitchcock Medical Center, performed surgery to repair the torn muscle.  Mendoza had follow up examinations with Dr. Bell through January of 2008.  In March of 2008, Mendoza saw Dr. Monawar because of back pain.  In April and May of 2008, Mendoza had physical therapy for left pectoralis muscle weakness that was recommended by his primary care physician, Dr. Jacinto P. Casio.

An MRI done in August of 2009 showed disc disease at L5-S1 with central disc extrusion.  Dr. Casio prescribed pain medication for low back pain and also treated Mendoza for hypertension and dyslipidemia (excess cholesterol).  Mendoza continued to be treated by Dr. Casio through 2011.  Mendoza underwent evaluative examinations and assessments in 2009 through 2011 for purposes of his application for benefits.

II.  <u>Procedural History</u>

Mendoza applied for social security benefits on May 21, 2007, alleging that he had been disabled since January 1, 2007, due to a ruptured left pectoralis muscle and lumbar disc disease.

2

When his application was denied, Mendoza sought a hearing before an Administrative Law Judge ("ALJ").  The hearing was held on March 11, 2010, and Mendoza, who was represented by counsel, testified.  A vocational expert also testified.

The ALJ issued his decision on April 16, 2010.  The ALJ found that Mendoza had "left upper extremity disorder" and degenerative disc disease of the lumbar spine that were severe impairments.  Admin. Rec. at 24.  The ALJ also found that despite those impairments Mendoza was able to do light work except for jobs that required reading and writing.  In addition, the ALJ imposed work limitations for no overhead reaching with the left arm, only occasional pushing and pulling and horizontal reaching with the left arm, no climbing ladders or scaffolding, and only unskilled work with routine and repetitive tasks.  Although he found that Mendoza could not return to his former work as a machine operator or a warehouse worker, the ALJ concluded, based on the testimony of the vocational expert, that jobs existed in significant numbers that Mendoza could do.  Therefore, the ALJ determined that Mendoza was not disabled.

Mendoza sought review of that decision here, arguing that the ALJ did not properly evaluate the medical opinions in the record.  The court held that the ALJ did not adequately explain

3

his reasons for giving controlling weight to the opinion of the
state agency non-examining physician while giving little weight
to the opinions of Mendoza's treating physicians.  The court also
noted that the state agency non-examining physician completed his
review of the record before certain test results and the opinions
of Mendoza's general practitioner were added to the record.  As a
result, the decision of the Commissioner was vacated, and the
case was remanded for further proceedings.  See Mendoza v.
Astrue, Case No. 10-cv-157-SM (D.N.H. May 10, 2011).

On remand, the case was assigned to the same ALJ, and a
hearing was held on November 17, 2011.  Mendoza, who was again
represented by counsel, was present and testified.  Donald
Goldman, M.D., an orthopedic surgeon, testified telephonically as
an independent medical expert.  A vocational expert testified in
person.

The ALJ issued his decision on January 20, 2012, in which he
again concluded that Mendoza was not disabled.  In this decision,
the ALJ found that Mendoza's severe impairments were degenerative
disc disease of the lumbar spine and ruptured left pectoralis
muscle.  The ALJ reviewed the medical evidence and found that
Mendoza's allegations as to the severity of his limitations were
not supported by the record.  Based on his review of the record,

the ALJ concluded that Mendoza had the residual functional capacity "to perform a range of light-sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he can lift up to 20 pounds occasionally and 10 pounds frequently, but he can sit for 8 hours, stand and walk for 1 hour each in an eight hour work day."  Admin. Rec. at 501.  The ALJ also found some limitations in Mendoza's ability to reach with his left arm and in doing postural activities.

In making the residual functional capacity assessment, the ALJ gave great weight to Dr. Goldman's opinion that Mendoza had no restrictions on his ability to walk, stand, and sit.  The ALJ gave moderate weight to the medical opinions of a consultative examining physician, Dr. Ralph Wolf, and two state agency medical consultants, Dr. Hugh Fairley and Dr. Robert F. Draper, who each found that Mendoza had residual functional capacity for work with some limitations.  The ALJ gave some weight to the opinion of an occupational therapist, John Moran, who evaluated Mendoza and found he had a residual functional capacity to do light work but only on a part-time basis.  The ALJ gave little weight to the opinion of Mendoza's treating physician, Dr. Casio, that Mendoza was unable to work, and little weight to similar opinions by treating physicians, Dr. Bell and Dr. Monawar.

The ALJ found that Mendoza could not do his past relevant work because those jobs required exertional levels beyond Mendoza's capacity.  Although Mendoza's counsel argued that Mendoza had limited ability to communicate, read, and write in English because he had grown up and gone to school in Mexico, the ALJ noted Mendoza's proficiency in English at the hearing and that Mendoza had obtained a general equivalency degree.  Based on the vocational expert's testimony, the ALJ found that Mendoza could do jobs such as an addresser, loader of semi-conductor dies, and surveillance system monitor.  For that reason, the ALJ found that Mendoza was not disabled.

## Standard of Review

Pursuant to § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing."  In reviewing a social security decision, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.

§ 405(g); <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev.</u>, 620 F.3d 62, 66 (1st Cir. 2010).

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).[3]  The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled.  20 C.F.R. § 404.1520.  The claimant bears the burden, through the first four steps, of proving that his impairments preclude him from working.  <u>Freeman v. Barnhart</u>, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Commissioner determines whether other work that the claimant can do, despite his impairments, exists in significant numbers in the national

---

[3]  The Social Security Administration promulgated regulations governing eligibility for disability insurance benefits at Part 404 and eligibility for supplemental security income at Part 416.  Because the regulations are substantially the same, the court will cite only to the disability insurance benefits regulations, Part 404.  <u>See</u> <u>McDonald v. Sec'y of Health & Human Servs.</u>, 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).

economy and must produce substantial evidence to support that finding.  Seavey, 276 F.3d at 5.

## Discussion

In support of his motion to reverse the Acting Commissioner's decision, Mendoza contends that the ALJ did not weigh the medical opinion evidence properly, particularly the opinions of Dr. Goldman and Dr. Casio.  Mendoza also contends that the ALJ failed to properly consider his language limitations and did not identify enough jobs to meet the significant numbers requirement at Step Five.  The Acting Commissioner moves to affirm.

## I.  Medical Opinions

The social security regulations provide the structure for determining what weight is given to medical opinions.  20 C.F.R. § 1527.  As directed by the regulations, the ALJ attributes weight to a medical opinion based on a variety of factors including the nature of the relationship between the medical source and the applicant, the extent to which the opinion includes supporting information, the consistency of the opinion with the record as a whole, the specialization of the source, the source's understanding of the administrative process, and the source's familiarity with the applicant's record.  § 404.1527(d);

see also Policy Interpretation Ruling Titles II and XVI:  Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p, 1996 WL 374188 (July 2, 1996).  A treating medical source is the applicant's own physician, psychiatrist, psychologist, or other acceptable medical source.  20 C.F.R. § 404.1502.  A treating source's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  § 404.1527(d).  If the ALJ decides not to give controlling weight to a treating source's opinion, the decision must provide specific reasons to support the weight given.  SSR 96-2p.

###### A.   Dr. Goldman

Dr. Goldman, an orthopedic surgeon, testified at the hearing as a medical expert but did not treat or examine Mendoza.  During his testimony, Dr. Goldman stated that there was no objective evidence in the record to support Mendoza's complaints of disabling pain in his back or the limitations ascribed by some of the other medical sources.  In Dr. Goldman's opinion, Mendoza had no limitations in his ability to stand, walk, or sit, but was restricted from climbing ladders and scaffolding.[4]

---

[4]   Mendoza contends that Dr. Goldman erred in failing to consider his hypertension and other physical issues.  As Dr. Goldman explained, he is an orthopedic surgeon and did not

The ALJ gave "great weight" to Dr. Goldman's opinion. In support, the ALJ stated that Dr. Goldman had reviewed the entire record and had heard Mendoza's testimony at the hearing. The ALJ noted that Dr. Goldman was questioned by Mendoza's counsel and had explained the significance of a lack of objective findings and clinical examination results to support the limitations Mendoza claimed. The ALJ also noted that Dr. Goldman acknowledged some limitations caused by the injury to Mendoza's pectoralis muscle but that the injury did not preclude all functioning. The ALJ found that Dr. Goldman's opinion was well supported by the record.

Mendoza contends that Dr. Goldman's opinion should not have been given great weight for a variety of reasons. Mendoza, however, does not contend that Dr. Goldman misread the record and overlooked objective findings and clinical examination results that support Mendoza's claims.[5] At the hearing, counsel for Mendoza acknowledged in response to a question from Dr. Goldman that Dr. Wolf's consultative examination was the only record

consider other issues that were not within his area of expertise.

[5] Although Mendoza criticizes Dr. Goldman for failing to mention records generated by Dr. Wang at Pain Solutions, Dr. Wang provides no objective findings that support Mendoza's claims. Dr. Wang found good range of motion, pain free, in Mendoza's hips and legs, and no difficulty with walking. Dr. Wang also noted that straight leg testing was negative.

10

evidence of an examination of Mendoza's back for function.  While Dr. Goldman's "vehement" disagreement with Dr. Wolf's opinions seems a bit overstated, Dr. Goldman was correct that Dr. Wolf's examination notes show normal ranges of motion in Mendoza's left arm and both legs and hips and negative results on straight-leg tests.

To the extent that Mendoza challenges the ALJ's reliance on Dr. Goldman's opinion because the ALJ might have requested a consultative examination or might have submitted written interrogatories to Dr. Goldman, Mendoza has not shown that failure to employ those options warrants reversal of the ALJ's decision.  In addition, although Mendoza argues that Dr. Goldman should have submitted a written report expressing his opinion before the hearing, Mendoza provides no authority suggesting that such a report was required.

The opinion of a non-examining medical expert may provide substantial evidence to support the ALJ's findings when the opinion is properly supported by adequate explanations. § 404.1527(c)(3); Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991).  Dr. Goldman explained that his opinion was based on the lack of objective findings in the record supporting Mendoza's complaints, specifically that the

record did not show atrophy in his legs, a gait abnormality, positive results on straight leg testing, parathesias or weakness, or supporting test results.  Instead, Dr. Goldman explained, the record contained opinions about limitations based on Mendoza's subjective complaints of pain without any test results to support the opinions.  Dr. Goldman noted that the evaluation done by the occupational therapist was more than two years old and that the medical records produced since did not show supporting objective evidence of limitations.  Dr. Goldman disagreed with the opinions of Mendoza's primary care doctor, Dr. Casio, because he was not a surgeon, and he disagreed with the opinion of the consulting orthopedist, Dr. Wolf, because he did not reference medical evidence to support the limitations he found.

Although Dr. Goldman's manner in giving testimony may have been unconventional, he provided explanations for his opinions based on the record.  He asked questions during his testimony to satisfy himself that he had seen all of the medical record and that there were no other test results or records to support the limitations Mendoza claimed.  He did not diagnose Mendoza's back issue because he did not find medical support for the pain Mendoza claimed.  As such, Dr. Goldman's opinion was properly

12

supported and entitled to the weight the ALJ chose to ascribe to it.

B.   Dr. Casio

Dr. Casio gave opinions about Mendoza's impairments and limitations based on his treating relationship with Mendoza, as his primary care physician.  In 2008, Dr. Casio wrote that his office was following Mendoza and that Mendoza's chronic low back pain made it difficult for him to work.  Between 2009 and 2011, Dr. Casio wrote several "To Whom It May Concern" letters saying that Mendoza was being followed by his office and was unable to work because of significant low back pain due to lumbar disc disease.

In May of 2010, Dr. Casio completed a medical source statement in which he noted that Mendoza was limited to lifting and carrying no more than ten pounds occasionally, could walk or stand for less than two hours in an eight-hour day, and was limited in his ability to push and pull.  Dr. Casio also indicated that Mendoza would need unscheduled breaks, was not capable of sustaining gainful employment, and would be absent three or more times per month.  In a "To Whom It May Concern" note written on the same day, Dr. Casio stated that Mendoza had intractable low back pain and chronic pain due to the pectoralis

13

muscle rupture, that he was deconditioned, and that he was being
followed for hypertension and dyslipidemia.

The ALJ acknowledged Dr. Casio's notes and his opinions as
provided in the medical source statement, but gave those opinions
little weight.  The ALJ explained that although Dr. Casio's
treatment notes document Mendoza's subjective complaints about
his back pain, Dr. Casio did not perform musculoskeletal
examinations to evaluate his subjective complaints.  As a result,
Dr. Casio's treatment notes included little or no objective or
clinical testing results to support his opinion.

Mendoza argues that the ALJ overemphasized the need for
clinical or objective evidence to support his impairments and
instead should have credited Dr. Casio's opinion that was based
on Mendoza's subjective complaints.  In support, Mendoza relies
on SSR 96-7p, "Titles II and XVI:  Evaluation of Symptoms in
Disability Claims:  Assessing the Credibility of an Individual's
Statements," 1996 WL 374186, which explains that while symptoms
cannot be measured objectively, the effects of symptoms can be
clinically observed through examination and objective results.
Dr. Casio did not clinically observe the claimed effects of
Mendoza's symptoms.  As such, SSR 96-7p does not support
Mendoza's claim of error.

14

Therefore, the ALJ properly explained the weight he attributed to Dr. Casio's opinion.

### C.   Other Opinions

Mendoza contends that the ALJ ascribed the greatest weight to the least credible sources and should have given greater weight to the treating source opinions.  Relying on SSR 96-8p, "Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims," 1996 WL 374184, at *5, Mendoza argues that the ALJ should have given more weight to other opinions "because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."

### 1.   Other Medical Opinions

Mendoza disagrees with the weight ascribed to other non-treating sources, Dr. Draper and Dr. Fairley.  The ALJ gave each opinion moderate weight and explained that their opinions were consistent with the record evidence that "showed largely normal examinations."  Because those opinions were not from treating sources, the ALJ gave them only moderate weight.  As such, the ALJ properly explained the basis for his assessment of those decisions.

Mendoza notes that the ALJ did not address Dr. Wang's "impressions" of Mendoza based on a single examination conducted for purposes of providing pain management care.  Mendoza does not identify a medical opinion that the ALJ ignored.  Further, as discussed above, Dr. Wang's treatment notes do not provide support for disabling impairments.

Dr. Wolf, who did a consultative examination, provided an opinion that Mendoza could work at a sedentary exertional capacity with certain other restrictions.  The ALJ gave Dr. Wolf's opinion moderate weight because it was consistent with other treatment notes and functional capacity evaluations. Mendoza does not explain why that assessment was erroneous.

The ALJ explained that he gave the opinions of Dr. Bell and Dr. Monawar, both treating physicians who gave opinions that Mendoza was unable to work in 2007 and 2008, little weight.  The ALJ explained that Dr. Bell did not provide an analysis of Mendoza's functional abilities and limitations, that his opinion was inconsistent with Dr. Bell's evaluation of Mendoza, and that the opinion that Mendoza could not work addressed an issue that is reserved for the Commissioner to decide.  Similarly, the ALJ explained that Dr. Monawar's opinion was expressed on a health certificate that Mendoza was disabled and could not work as of

16

April of 2008 and that the opinion was not consistent with Dr. Monawar's evaluation of Mendoza, was based on a short treating relationship, and addressed an issue which is reserved for the Commissioner.  The ALJ, therefore, adequately explained his reasons for giving little weight to those opinions.


### 2.  Occupational Therapist Evaluation

John Moran did a functional capacity evaluation of Mendoza. Moran found that Mendoza could work at the light exertional level, avoiding overhead lifting with the left shoulder, but only on a part-time basis.  The ALJ gave Moran's opinion some weight but stated that it was unclear why Moran limited Mendoza to part-time work when Mendoza was able to complete the three-hour test, although some activities were interrupted by elevated blood pressure.  The ALJ noted that Mendoza's elevated blood pressure had not been treated at the time of the evaluation and that the issue was addressed in the restrictions in the residual functional capacity.


Mendoza argues that Moran's opinion is the best source of his ability to do work activities.  He contends that the ALJ did not adequately explain the weight ascribed to the opinion and

ignored Moran's restrictions that would allow Mendoza to "self
pace" and change position at work.[6]


Only acceptable medical sources can give medical opinions,
can be considered treating sources, and can establish the
existence of a medically determinable impairment.  §§ 404.1502,
404.1513(a), & 404.15276(a)(2); see also SSR 06-3p, 2006 WL
2329939, at *2 (Aug. 9, 2006)[7]; Taylor v. Astrue, 899 F. Supp. 2d
83, 88 (D. Mass. 2012).  Other care providers "may provide
insight into the severity of the impairment and how it affects
the individual's ability to function."  SSR 06-3p, 2006 WL
2329939, at *2; accord Young v. Colvin, 2014 WL 711012, at *6
(D.N.H. Feb. 25, 2014); Noonan v. Astrue, 2012 WL 5905000, at *8
(D.N.H. Nov. 26, 2012).  "As the Commissioner's own Social
Security Ruling explains, '[t]he evaluation of an opinion from a
medical source who is not an "acceptable medical source" depends
on the particular facts in each case.  Each case must be
adjudicated on its own merits based on a consideration of the
probative value of the opinions and a weighing of all the

---

[6]   Moran's limitation for change of position related to his
opinion that, in the future, Mendoza may be able to do full time
work at the medium exertional level.

[7]   SSR 06-3p is titled Titles II and XVI:II and XVI:
Considering Opinions and Other Evidence from Sources Who Are Not
"Acceptable Medical Sources" in Disability Claims; Considering
Decisions on Disability by Other Governmental and Nongovernmental
Agencies."

evidence in that particular case.'" <u>Taylor</u>, 899 F. Supp. 2d at 88 (quoting SSR-06-3p at *5).

The ALJ correctly noted that Moran did not explain why he limited Mendoza to part-time work.  It appears from Moran's report that the limitation may have been based on Mendoza's poor conditioning, which led to elevated heart rate and blood pressure during certain activities.  Moran's evaluation was done in January of 2009.  Subsequent medical sources have not limited Mendoza to part-time work.  Therefore, the ALJ properly considered Moran's evaluation results and was not required to give them more weight than was ascribed.

Mendoza has not shown any reversible error based on the ALJ's evaluation of the medical opinion evidence.

II. <u>Residual Functional Capacity</u>

The ALJ found that Mendoza had "the residual functional capacity to perform a range of light-sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) [sic] except he can lift up to 20 pounds occasionally and 10 pounds frequently, but he can sit for 8 hours, stand and walk for 1 hour each in an 8 hour workday."  Admin. Rec. at 501.  The ALJ found that Mendoza could "frequently reach, handle, finger, feel, push, and pull with the

right dominant hand." <u>Id</u>.  Mendoza was limited with his left arm and hand "to occasional reaching overhead, reaching in other directions, and pushing and pulling." <u>Id</u>.  He was able to do all postural activities occasionally but had to avoid unprotected heights, work with vibrating machines, and extreme temperatures.

A.  <u>Capacity</u>

Mendoza contends that the ALJ's residual functional capacity assessment is misleading because of the limitation to "light-sedentary work."  He argues that as described by the ALJ his exertional capacity was less than sedentary because of limited lifting, no carrying, and other restrictions.  Mendoza misinterprets the ALJ assessment.

The ALJ cited § 404.1567(a) and § 416.967(a), which define sedentary work for purposes of Title II and Title XVI, respectively.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." § 404.1567(a). The ALJ modified that assessment to allow lifting up to 20 pounds occasionally and 10 pounds frequently, which corresponds to the definition of light work at § 404.1567(b) and § 416.967(b). Therefore, the ALJ assessed a capacity for sedentary work with a

20

capacity for lifting and carrying at the light work level.   The
assessment is properly explained and is not misleading.

    B.   <u>Language</u>

Mendoza contends that the ALJ erred in failing to impose a
limitation in the residual functional capacity on his ability to
communicate in English, specifically to read and write in
English.   Mendoza argues that the ALJ imposed that limitation in
his prior decision, issued on April 16, 2010, and did not
adequately explain why the limitation was omitted from the
decision under review here.

The ALJ's prior decision denying Mendoza's application for
benefits for the same period of disability was vacated by the
Appeals Council and does not have preclusive effect.   <u>See</u> <u>Izzo v.
Comm'r of Social Sec.</u>, 186 Fed. Appx. 280, 287 (3d Cir. 2006);
<u>Kerney v. Colvin</u>, ___ F. Supp. 2d ___, 2014 WL 1091968, at *6
(S.D. Ohio Mar. 18, 2014); <u>cf.</u> <u>Drummond v. Comm'r of Social Sec.</u>,
126 F.3d 837, 843 (6th Cir. 1997) (burden on Commissioner to show
changed circumstances for a second application to avoid
preclusive effect of a prior final decision awarding benefits).
Therefore, the ALJ's previous residual functional capacity
assessment has no effect on the decision under review.

In the current decision, the ALJ noted that counsel for
Mendoza represented that Mendoza does not read and write well in
English and that she filed a brief on the issue after the second
hearing.  In the brief, the ALJ recounted, counsel represented
that Mendoza attended school in Mexico, that his primary language
is Spanish, and that his English vocabulary is somewhat limited.
Counsel also said that Mendoza had attained a general equivalency
degree.

The ALJ found that Mendoza's general equivalency degree was
"highly reflective of his abilities with the English language."
The ALJ also noted that although an interpreter was available at
the hearing, Mendoza had not needed that assistance and that
Mendoza demonstrated no limitations in his ability to communicate
in English during the hearing.  The ALJ noted that counsel had
not provided any evidence, other than Mendoza's testimony, that
he had difficulty in reading and writing in English.

In support of his motion to reverse, Mendoza argues that
although he can communicate verbally in English, "he has a heavy
accent, he cannot verbally communicate grammatically well, and
his English vocabulary is limited."  Further, Mendoza contends,
"verbal communication in English was not the concern as much as
English reading and writing."  Mendoza cites his adult function

22

report, which he completed in September of 2007, to show his inability to read and write in English.

The adult function report does not include questions, test results, or other direct information about Mendoza's ability to read and write in English.  Mendoza argues that his spelling errors in his answers show his language limitations, as the ALJ noted in his previous decision.  Although he made some spelling errors, it is not clear whether those mistakes were due to haste and a lack of proof reading or language limitations.  Mendoza has not shown that the ALJ erred in failing to include a language limitation in the residual functional capacity assessment.

C.  <u>Other Limitations</u>

To the extent Mendoza argues that the ALJ's residual functional capacity is wrong because he did not consider limitations caused by high blood pressure, heart disease, headaches, or impaired renal functions, he has not shown functional restrictions imposed by those conditions.  Further, the ALJ noted that Mendoza's blood pressure was untreated during the functional capacity evaluation done by John Moran and that the issue was considered in the residual functional capacity assessment by limiting activities that caused pain.  Therefore,

Mendoza has not shown reversible error based on a failure to consider all of his impairments and limitations.

III.   <u>Jobs</u>

Based on the vocational expert's hearing testimony, the ALJ found that Mendoza could do unskilled sedentary work and that representative jobs included addresser, loader of semiconductor dies, and surveillance system monitor.  Mendoza contends that because of his limited ability to read and write in English, he could not do the jobs the vocational expert identified.  As discussed above, Mendoza has not shown that the ALJ erred in failing to include a language limitation in the residual functional capacity.  Without a language limitation, the vocational expert testified that Mendoza could do all three jobs.

The vocational expert also testified that even with the language limitations Mendoza described at the hearing he could still do the addresser and loader jobs but that he did not know whether he could do the surveillance monitor job.  Mendoza argues that addresser and loader occupations do not provide enough jobs to meet the requirement of a significant number of jobs in the regional or national economies.

24

The significant number requirement is satisfied by jobs in either the regional or the national economy.  42 U.S.C. § 423(d)(2)(A); see also Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012); Seavey, 276 F.3d at 5; Lawler v. Astrue, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011).  The vocational expert testified that there are about 100 addresser jobs in New Hampshire and 20,000 addresser jobs in the national economy and less than 100 loader jobs in New Hampshire and about 700 in the national economy.  Together, therefore, there are 20,700 jobs in the national economy.  Although Mendoza states that 20,700 "is hardly a significant number," he offers no authority or developed argument to show that 20,700 jobs nationally is insufficient to meet the requirement at Step Five.  See, e.g., Gutierrez v. Comm'r of Social Sec., 740 F.3d 519, 528 (9th Cir. 2014) (holding that 25,000 jobs in national economy was significant and citing cases); Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs regionally and 10,000 jobs nationally sufficient); see also Beltran, 700 F.3d at 390-91 (discussing factors needed to determine a "significant number"); Yelovich v. Colvin, 532 Fed. Appx. 700, 702 (9th Cir. 2013) (no bright line rule for determining "significant number"); Taylor v. Astrue, 494 Fed. Appx. 895, 898 (10th Cir. 2012) (same).

Therefore, Mendoza has not shown that the ALJ erred in finding Mendoza not disabled based on the vocational expert's testimony about the jobs he could do.

Because substantial evidence supports the ALJ's findings, the decision must be affirmed.

### Conclusion

For the foregoing reasons, the claimant's motion to reverse the decision of the Commissioner (document no. 11) is denied. The Commissioner's motion to affirm (document no. 14) is granted. The clerk of court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

August 19, 2014

cc:   Janine Gawryl, Esq.
      T. David Plourde, AUSA